UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 18-196-DLB-CJS

VALARIE KOPP                                                                               PLAINTIFF

v.                      **MEMORANDUM OPINION AND ORDER**

DELTA AIRLINES, INC., et al.                                   DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Arising from Plaintiff Valarie Kopp tripping while on a Delta flight that departed from the Cincinnati Airport on April 20, 2017, (Doc. # 1-2 at 3–7), this matter is before the Court on Defendant Delta Airlines, Inc.'s Motion for Summary Judgment (Doc. # 17). The Motion has been fully briefed and is now ripe for the Court's review. (Docs. # 18 and 19). For the reasons set forth herein, the Motion is **granted**, and this matter is finally **dismissed**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On April 20, 2017, Plaintiff Valarie Kopp was flying from the Cincinnati Airport ("CVG") to Los Angeles, California ("LAX") on a Delta Airlines, Inc. ("Delta") flight. (Doc. # 1-2 at 4). During the flight, Kopp got out of her seat to stretch in the aisle. *Id*.; *see also* (Doc. # 17-5 at 11–12). At the same time, Kopp alleges that a flight attendant[1] "came rushing down the aisle . . . at a high rate of speed." (Doc. # 1-2 at 4); *see also* (Doc. # 17-

---

[1]      The identity of the flight attendant was unknown at the time of filing, *see* (Doc. # 1-2 at 3) (identifying the flight attendant as "Jane Doe"), but she was later identified as Christine Padin, *see generally* (Doc. # 17-3) (deposition of Christine Padin). Padin was the flight attendant responsible for servicing the first-class section on the at-issue flight. *Id.* at 10–11.

5) (testifying that "the stewardess started from the back and started running down the aisleway"). She later admitted, however, that the flight attendant was merely "walking fast" and not "running." (Doc. # 17-5 at 11) (deposition of Valarie Kopp).

Kopp claims that "[i]n order to avoid colliding" with the flight attendant she "stepped into a row of seats, and in doing so, twisted her knee, causing serious injury and requiring serious surgical intervention to repair the damage." (Doc. # 1-2 at 4). Specifically, Kopp explained that her "left foot touched the floor brace of the seat in front of [her], causing [her] knee to twist outward and [she] fell into the seat." *Id.* at 17; *see also* (Doc. # 17-5 at 11) ("I went to step into our row of seats and my foot caught on the frame of the seat in front of me and I fell, but my foot and my knee stayed on the opposite side of the frame."). Kopp alleges that because the flight attendant "rushed down the airplane [aisleway]," Kopp "rush[ed to get] out of the way" and had to "jump into a row of seats . . . for fear of being run over." (Doc. # 1-2 at 5–6). At no time, however, did the flight attendant make physical contact with Valarie Kopp.[2] (Doc. # 17-5 at 11, 41) (descriptions by Valarie Kopp of the incident during her deposition and in an email to a Delta representative sent shortly after the incident). Additionally, Kopp admitted that there was nothing under the seat that she would have tripped on, (Doc. # 17-5 at 11, 15–16), and both Kopp and her husband admitted that there was nothing apparently defective or wrong with the seat upon which she tripped, (Doc. # 17-4 at 12:5-7) (Plaintiff's husband testifying that he does not recall "ever see[ing] anything that [he] would consider defective"); (Doc. # 17-5 at 15).

---

[2] During her deposition, the flight attendant testified that she did not recall anything about the flight during which Kopp alleges she sustained her injury. (Doc. # 17-3 at 8–9) (testifying that she did not remember the flight from CVG to LAX on April 20, 2017, did not recognize Ms. Kopp, and did not recall Ms. Kopp falling).

2

Kopp brought claims of negligence against both Delta and the flight attendant. (Doc. # 1-2 at 5–6). She alleges in the Complaint that Delta is vicariously liable for the negligence of the flight attendant because the flight attendant was acting within her scope of employment "when she negligently ran down the [aisleway] and caused Plaintiff to injure her knee." *Id.* at 5. Kopp requests compensatory and special damages, pre-judgment interest, costs, fees, and any other relief the Court finds to be equitable. *Id.* at 7.

Kopp originally filed her action in Boone County Circuit Court. (Docs. # 1 at 1 and 1-2 at 3). After removal to federal court, Delta moved for summary judgment. (Doc. # 17). The Motion has been fully briefed, (Docs. # 18 and 19), and is now ripe for the Court's review.

## II. ANALYSIS

### A. Standard of Review

Summary judgment may be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Once the moving party has met the initial burden of showing the absence of a genuine dispute of material fact, the non-moving party must then 'come forward with specific facts showing that there is a genuine issue for trial.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," *Anderson*, 477 U.S. at 252, and the plaintiff must "do more

3

than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* 475 U.S. at 587. It is up to the Court to determine, while viewing the evidence in the light most favorable to the non-moving party and drawing inferences in that party's favor, *id.* (citing *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007)), "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict," *id.* (alteration in original) (quoting *Anderson*, 477 U.S. at 248).

In considering whether there are genuine issues of material fact, a court may consider "materials in the records including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). Parties may not rely, however, on "the mere pleadings themselves." *Thomas v. City of Alliance*, 52 F.3d 326, at *2 (6th Cir.1995) (unpublished table decision) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### B.  Negligence

In support of its Motion for Summary Judgment, Delta argues that it and its flight attendant were not negligent as a matter of law.[3] *See* (Doc. # 17-1). Specifically, Delta claims that while it has a duty to protect its passengers, it did not have a duty to prevent

---

[3]  Plaintiff brings a negligence claim against Delta under a theory of vicarious liability. (Doc. # 1-2 at 5). Under such a theory, Delta would be liable for torts caused by the flight attendant while "acting on behalf of and pursuant to the authority of [Delta]." *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). There is no doubt that the flight attendant was acting on behalf of Delta when the alleged incident occurred. Accordingly, in determining whether summary judgment shall be granted in favor of Delta, the Court must determine whether the flight attendant was negligent. *Id.* If the Court finds that the flight attendant was not negligent as a matter of law, summary judgment will be granted in favor of both the flight attendant and Delta; conversely, if there is a genuine issue of material fact as to whether the flight attendant was negligent, Delta's summary-judgment motion must be denied.

this accident. *Id.* at 6–7. Additionally, Delta argues that the actions of the flight attendant were not "negligent or [ ] the proximate cause of [Kopp's] injury." *Id.* at 7. In sum, Delta does not appear to dispute Kopp's injury; rather, Delta disputes Kopp's allegation that the facts are sufficient to show that the flight attendant and, by extension, Delta were negligent. *See generally* (Docs. # 17 and 19). Predictably, Plaintiff takes the opposite position, arguing that Delta had a duty "to its passengers to keep them safe while they are aboard a Delta flight." (Doc. # 18). Kopp seems to suggest that there is a material issue of fact as to whether the flight attendant's movement in the aisle was a breach of that duty, and therefore the case must go to a jury.[4] *Id.* at 6.

To make out a claim for negligence in Kentucky,[5] a Plaintiff must prove four elements: "(1) the defendant owed the plaintiff a duty of care; (2) the defendant breached

---

[4] While she admits that she caught her foot on the seat in front of her, (Docs. # 1-2 at 17 and 17-5 at 11), Kopp does not suggest that Delta was negligent in how it designed the plane or seats. In other words, she has not framed this as a premises-liability case. Rather, Kopp frames this as a standard negligence case, arguing that the flight attendant's action—walking quickly down aisle of the plane—was negligent.

[5] Neither party disputes that Kentucky law applies, *see* (Docs. # 17-1 at 18), and the Court agrees that application of Kentucky law is appropriate given the circumstances. A court sitting in diversity must apply the substantive law of the state in which it is sitting, *see Hanna v. Plumer*, 380 U.S. 460, 465–66 (1965) (explaining *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)), including its choice-of-law rules, *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994). Kentucky applies its own law in tort cases if there are *any* significant contacts with Kentucky. *Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 145 n.8 (Ky. 2009); *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009); *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) (finding that "if there are significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied").

Underlying this choice-of-law approach for torts is the fact "that 'Kentucky's tort . . . laws are intended to protect Kentucky residents and provide compensation when they are *the injured party*.'" *Hoagland v. Ford Motor Co.*, No. Civ.A. 06-615-C, 2007 WL 2789768, at *4 (W.D. Ky. Sept. 21, 2007) (quoting *Custom Prods., Inc. v. Fluor Daniel Can., Inc.*, 262 F. Supp. 2d 767, 773. (W.D. Ky. 2003)). Here, the injured party is from Kentucky, the flight originated in Kentucky, and the subsequent medical treatment was in Kentucky. (Doc. # 1-2 at 3–4, 13–14). The Court finds these contacts to be significant, so Kentucky law applies. *See Warndorf v. Otis Elevator Co.*, No. 2:17-cv-159-DLB-CJS, 2019 WL 137585, at *2 ("The tort claims alleged here were committed against [a] Kentucky resident[], which gives the claims 'significant contacts' with Kentucky."

that duty of care; (3) a causal connection between the defendant's conduct and the plaintiff[']s damages; and (4) damages." *Gonzalez v. Johnson*, 581 S.W.3d 529, 532 (Ky. 2019) (citing *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016)). In order to prove causation—the third element—the plaintiff must show both but-for and proximate causation. *Patton*, 529 S.W.3d at 730.

### 1. Duty

Whether the defendant owes a duty to the plaintiff is a legal issue reserved to the Court, *Patton*, 529 S.W.3d at 792, because "[w]hen a court resolves a question of duty it is essentially making a policy determination," *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 533 (Ky. 2003) (quoting *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d, 245, 248 (Ky. 1992)). "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof and therefore no actionable negligence." *Ashcraft v. People's Liberty Bank & Tr. Co.*, 724 S.W.2d 228, 229 (Ky. Ct. App. 1986).

In Kentucky there is a universal duty; "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Kendall v. Godbey*, 537 S.W.3d 326, 331 (Ky. App. 2017) (quoting *Lee v. Farmer's Rural Elec. Co-Op Corp.*, 245 S.W.3d 209, 212 (Ky. App. 2007)). Some people and entities, however, owe higher duties.

> "Kentucky has long recognized the common carrier standard of care. A common carrier of passengers owes those passengers the highest degree of care in transporting them to protect them from 'dangers that foresight can anticipate and to exercise the utmost skill, diligence and foresight for [their] safety, consistent with the practical operation of its [vehicle].'"

---

(quoting *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Ga.*, No. 2:15-cv-161-DLB-HAI, 2017 WL 3122661, at *12 (E.D. Ky. July 21, 2017)).

6

*Kendall*, 537 S.W.3d at 332 (quoting *Wise v. Fannin*, 207 S.W.2d 764, 765 (Ky. 1948)); *see also Donahoo v. CSX Transp. Inc.*, No. 4:12-cv-104-JHM-HBB, 2013 WL 1966249, at *3 (W.D. Ky. May 10, 2013) ("[D]uty of a common carrier *to its passengers* is to exercise the highest degree of care." (quoting *Cody v. Nortof*, 267 S.W.2d 403, 406 (Ky. 1954)). The highest degree of care "means the utmost care exercised by prudent and skillful persons in the operation of the conveyance." *Kendall*, 537 S.W.3d at 333 (quoting *Shelton Taxi Co. v. Bowling*, 51 S.W.2d 468, 470 (Ky. 1932)).

However, a common carrier[6]—like an airline—is not strictly liable for *any injury* to a passenger during transportation. *Id*. Both parties acknowledge as much. (Docs. # 17-1 at 6 and 18 at 5). "Although a carrier must exercise the highest degree of care for its passengers, it is not an insurer of their safety." *Kendall*, 537 S.W.3d at 332 (quoting *Fisher v. Louisville Transit Co.*, 303 S.W.2d 272, 273 (Ky. 1957)). A carrier's "duty is limited to the natural and probable. [The carrier] is not bound to anticipate nor take precautions against the unforeseeable in the normal course of events." *Wise*, 207 S.W.2d at 765 (quoting *Howard v. Fowler*, 207 S.W.2d 559, 562 (Ky. 1947)). In effect, a common carrier's duty, while high, is limited to that which is foreseeable in the normal course of operations. *Id.* Additionally, general principles of negligence law require that a foreseen risk must "be unreasonable before the defendant may be held liable for creating the risk." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91 (Ky. 2003) (citing RESTATEMENT (SECOND) OF TORTS § 291 (AM. LAW INST. 1965)).

---

[6] "A commercial enterprise that holds itself out to the public as offering to transport freight or passengers. A common carrier is generally required by law to transport freight or passengers without refusal if the approved fare or charge is paid." *Common Carrier*, BLACK'S LAW DICTIONARY (11th ed. 2019).

7

The limit of a common carrier's liability under Kentucky law is best illustrated by the *Fisher* case. In that case, an adult passenger on a bus "received a broken arm when his elbow, which he had extended out an open window of the bus, struck a utility pole as the bus pulled away from the curb after . . . discharg[ing] passengers." *Fisher*, 303 S.W.2d at 272. The Kentucky Court of Appeals[7] found that the driver was not negligent because the driver had no knowledge that the passenger's arm was protruding out the window; the court declined to consider if the driver *should* have known that the passenger's arm was at risk of injury as it would "impose a duty on the bus driver to keep a constant, watchful eye over his passengers." *Id.* Such an extensive duty was found to be "not . . . sensible" as it "would impose a well-nigh impossible task on the driver of a bus in a modern urban occupation" who is working to "collect fairs, make change, take on and let off passengers, and [ ] operate the bus safely on a busy thoroughfare." *Id.* That court highlighted that in such a case "which involves an able-bodied adult passenger" there was "insufficient evidence of negligence on the part of [the bus company] to justify submission of the case to a jury." *Id.* In effect, *Fisher* can be read to find that the duty of a common carrier does not include closely watching every move of able-bodied passengers in an attempt to prevent injury because such a duty would be near impossible while carrying out the other tasks necessary to complete carriage.

Here, it is undisputed that Delta, as a common carrier, and its employees owed Plaintiff Kopp, as a passenger, "the highest degree of care" in transporting her. *Kendall*, 537 S.W.3d at 332. Delta is not, however, liable for *any injury* Kopp might have received

---

[7] Before 1976, the Kentucky Court of Appeals was the highest state court in Kentucky. THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION 265 tbl. T.1 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015).

during the flight. *Id.* at 333; *see also Fisher*, 303 S.W.3d at 273. The duty is limited to that which may have been foreseeable in the normal course of operations. *Kendall*, 537 S.W.3d at 332; *Wise*, 207 S.W.2d at 765. Delta's duty does not extend to preventing passengers from tripping over themselves. Specifically, Delta flight attendants do not have a duty to diligently monitor every able-bodied passenger on the plane to ensure passengers do not trip getting in and out of their seats; such a duty would be a "well-nigh impossible task" on top of the other duties flight attendants carry out to during a flight, including critical tasks which ensure the safety of the passengers. *Fisher*, 303 S.W.3d at 273; *see also* (Doc. # 17-3 at 6:5-21, 9:7-21) (flight attendant Christine Padin describing the training and duties of a Delta flight attendant).

While it is logically foreseeable that there is a risk that a passenger could trip while moving out of the aisle, whether to allow a flight attendant or someone else to pass, the Court finds that it is not unreasonable for a flight attendant to create that risk by walking down a plane's aisle. An alternative finding would be absurd given the many duties— including safety and security responsibilities which may be critical and time sensitive— that flight attendants undertake. In fact, extending a common carrier's duty to cover this scenario would make Delta an "insurer of [passenger] safety," which is a standard beyond "the highest degree of care for [ ] passengers"; it is clear that Kentucky law does not intend the duty of common carries to extend this far. *Kendall*, 537 S.W.3d at 332 (quoting *Fisher* 303 S.W.2d at 273). As Delta and the flight attendant did not have a duty to prevent the injury Plaintiff suffered, summary judgment is appropriate on the negligence claim brought against Delta. *See Ashcraft*, 724 S.W.2d at 229.

### *2.* *Breach*

Even if a Kentucky court were to find that the common carrier duty covered this scenario, no reasonable jury could find that the flight attendant in this case breached her duty of care. "Whether a standard of care is met, generally, is a fact intensive inquiry and is 'grounded in common sense and conduct acceptable to the particular community.'" *Veloudis v. Wal-Mart Stores East, Ltd. P'ship*, No. 2016-CA-000207-MR, 2017 WL 3499927, at *6 (Ky. App. July 28, 2017) (quoting *Shelton*, 413 S.W.3d at 913–14). Accordingly, a jury ordinarily determines whether a defendant has breached a duty of care. *Patton*, 529 S.W.3d at 729. This is not the case, however, when, viewing the evidence in the light most favorable to the non-moving party, "reasonable minds cannot differ or it would be unreasonable for a jury to find breach." *Veloudis*, 2017 WL 3499927, at *6 (quoting *Shelton*, 413 S.W.3d at 916); *see also A.A. By & Through Lewis v. Shutts*, 516 S.W.3d 343, 350 (Ky. App. 2017) (quoting *Shelton*, 413 S.W.3d at 916). In such a case, summary judgment may still be granted.

Here, there is no dispute of fact as to the events that led to Kopp's injury.[8] Kopp moved from the aisle into her seat after seeing a flight attendant walking down the aisle

---

[8] Delta's briefs do not appear to dispute what happened on the flight from CVG to LAX. *See* (Docs. # 17 and 19). Rather, they merely point out that Plaintiff mischaracterized the flight attendant's speed of travel in the Complaint, as she later admitted under oath at her deposition that the flight attendant was walking rather than running. (Docs # 17-1 at 7–8, 19 at 2). Plaintiff repeated the same mischaracterization in her interrogatories. (Doc. # 1-2 at 17) ("I was standing in the aisle stretching and attendant came running from back of Plane to front . . . ."). Specifically, during her sworn deposition, Plaintiff, in explaining what happened said, "the stewardess started from the back and started running down the aisleway." (Doc. # 17-5 at 11). Several questions later, the attorney for Delta specifically asked: "And you say she was running or was she walking fast?" *Id.* Plaintiff then admitted that the flight attendant was "[w]alking fast." *Id.*

Admissions by a nonmoving party during a deposition can eliminate any dispute about a material fact. *See Anderson v. Cash*, 70 F. App'x 251, 253 (6th Cir. 2003) (Plaintiff admitted during his deposition "that he posed an immediate threat to the safety of the officer or others, and that he was actively resisting arrest or attempting to evade arrest by flight . . . [so] there exists no genuine issue of material fact with regard to [Plaintiff's] excessive force claim and the district court

toward her. (Doc. # 17-5 at 11, 14). (descriptions by Valarie Kopp of the incident during her deposition and in an email to a Delta representative). As she attempted to get back into her seat, Kopp tripped on the frame of the seat in front of her. *Id.* The flight attendant never made any type of physical contact with Kopp. *Id.*

This a commonsense case; no reasonable jury could find that the flight attendant in this case breached her duty of care by walking—even walking quickly—up the aisle of the airplane during a flight. In fact, moving throughout the cabin to ensure safety and provide services to passengers is precisely the role of a flight attendant. *See* (Doc. # 17-3 at 6:5-21, 9:7-21) (deposition of Christine Padin). At times, flight attendants may even need to walk quickly in order to carry out essential tasks. There is no evidence in this case that the flight attendant was traversing the plane in a way that was unreasonable or unexpected of a flight attendant. Additionally, there is no evidence that the flight attendant would not have stopped to allow Kopp to get into her seat. Perhaps if the flight attendant had made physical contact with Kopp or was pushing a heavy cart down the aisle without warning passengers to move their elbows out of the way, the situation would be different. That is not the case here, however. The flight attendant's actions did not breach her duty of care to the passengers on the plane.

---

properly granted summary judgment in favor of [Defendant]."); *see also Williams v. Owensboro Bd. of Educ.*, No. 4:07-cv-149, 2009 WL 3210649, at *2 (W.D. Ky. Sept. 30, 2009) (finding no genuine issue of material fact that "Plaintiff's position could be combined with other positions, and could therefore be eliminated" after Plaintiff admitted during her deposition that "she is aware of [her] position being combined with additional positions or duties at other schools in Kentucky."). The Court does the same here and finds that Kopp's admission that the flight attendant was merely "walking fast" and not "running," (Doc. # 17-5 at 11), eliminates any dispute as to how quickly the flight attendant was traveling, so there is no *genuine* issue of material fact that would preclude the entry of summary judgment, FED. R. CIV. P. 56(a).

In fact, Plaintiff has not even put forth an argument as to *how* the flight attendant's actions were a breach of her duty or pointed to any specific facts which would allow a jury to find in her favor. Rather, Kopp just makes the conclusory assertion that "by running up the aisle," a mischaracterization of the events, (Doc. # 17-5 at 11), "[the flight attendant] was careless and caused the whole thing." (Doc. # 18 at 6). She later repeats the same conclusory assertion that "the flight attendant was clearly negligent when she ran down the aisleway of the plane." *Id.* Aside from continuing to allege that the flight attendant was running, after previously admitting that she was merely walking quickly, (Doc. # 17-5 at 11), Kopp has failed to explain how walking quickly breaches a flight attendant's duty of care towards passengers. *See generally* (Doc. # 18). It would be unreasonable for a jury to find the flight attendant breached her duty of care. Accordingly, the issue of breach is not appropriate for a jury, *Veloudis*, 2017 WL 3499927, at *6, and summary judgment must be granted in favor of Delta.

## III. CONCLUSION

Unfortunately for Plaintiff, saying someone acted negligently simply does not make it so. As Delta did not have a duty to prevent this type of injury, and even if it did the flight attendant did not breach that duty, the flight attendant was not negligent as a matter of law. Thus, Delta cannot be found liable for negligence under a theory of vicarious liability, *Williams*, 113 S.W.3d at 151, and summary judgment must be granted in Delta's favor.

Additionally, this Court has the ability to grant summary judgment sua sponte. *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000). "[A] district court may enter summary judgment sua sponte in certain limited circumstances, 'so long as the losing party was on notice that [it]

had to come forward with all of [its] evidence,'" *id.* (quoting *Salepour v. Univ. of Tenn.*, 159 F.3d 199, 203 (6th Cir. 1998)), and had a "reasonable opportunity to respond to all the issues to be considered by the court," *id.* (quoting *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995)). *See also* FED. R. CIV. P. 56(f). Here, the Motion for Summary Judgment by Delta raised the same issue that would have been raised had a similar motion been filed by the flight attendant—whether there was any issue of material fact that would preclude finding that the flight attendant was not negligent as a matter of law. Thus, Kopp had an opportunity to respond to the issues that would have been raised had the unnamed flight attendant also moved for summary judgment. Accordingly, the Court will sua sponte grant summary judgment in favor of the unnamed flight attendant for the reasons articulated above.

For the reasons set forth herein,

**IT IS ORDERED** as follows:

(1) Delta's Motion for Summary Judgment (Doc. # 17) is **GRANTED**;

(2) Summary Judgment in favor of Jane Doe, Unknown Flight Attendant is **GRANTED** sua sponte;

(3) This action is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(4) A corresponding **Judgment** will be entered contemporaneously herewith.

This 26th day of December, 2019.



Signed By:
*David L. Bunning*
United States District Judge